# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MANDY M. FINK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 02:13-cv-00238-TFM |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

March 27, 2014

## I. Introduction

Mandy M. Fink ("Plaintiff") brought this action pursuant to 42 U.S.C. § 1383(c)(3) for judicial review of the final determination of the Commissioner of Social Security ("Commissioner"), which denied her application for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§1381-1383(f).

## II. Background

### A. Facts

Treatment Record

Plaintiff was born on December 18, 1979. (R. 32). She has a GED and has no relevant work history in the past 15 years. (R. 33). The record reflects that Plaintiff has not engaged in substantial gainful work activity since her alleged disability onset date. (R. 33).

Plaintiff alleged disability as of September 1, 2002, due to a combination of physical and mental impairments including hepatitis C, a personality disorder, depression, chronic fatigue

syndrome, sleep apnea, anxiety, paranoia, and restless leg syndrome. (R. 155, 172).

Plaintiff has a history of heroin addiction. She is driven by a family friend to a Methadone Clinic every weekday to get her medications. (R. 34). She also attends counseling twice a month. (R. 34-35). On two occasions in 2003 and 2004, Plaintiff was an inpatient at White Deer Run for drug and alcohol rehabilitation. (R. 37). She has not used heroin since 2005. (R. 38). Plaintiff was hospitalized from October 12-18, 2010 after overdosing on drugs and alcohol in a suicide attempt. (R. 259). After treatment, Plaintiff was discharged in significantly improved condition, with her GAF score rising from 30 to 55.

Plaintiff has been diagnosed with hepatitis C since 2003 but does not take any medication for the condition because she needs someone to care for her and she does not currently have that option. (R. 42). She lives in an apartment with her mother and receives food stamps and medical assistance benefits. (R. 32).

The primary issue in this appeal involves the diagnosis of Bharat Jain, M.D., a board-certified specialist in sleep disorders and pulmonary disease. On August 2, 2010, Dr. Jain diagnosed Plaintiff with: (1) pathologic hypersomnolence, likely related to untreated sleep apnea; (2) dyspnea, but ruled out COPD; (3) restless legs, may be related to an iron deficiency; (4) chronic fatigue with depression; and (5) heroin addiction. R. 245-246. Dr. Jain prescribed formal overnight sleep testing to treat her obstructive sleep apnea syndrome.

On January 21, 2011, Muna Jabbour, M.D., performed a consultation for the state Bureau of Disability Determination. Dr. Jabbour noted that Plaintiff had a history of chronic fatigue syndrome. (R. 316.) Dr. Jabbour reported that a neurologic examination was completely normal and that Plaintiff was able to get on and off the examination table, squat and arise, sit, bend, stand, walk, lift, and grasp. (R. 315-16). She also completed a Medical Source Statement in

which she indicated that Plaintiff could stand/walk for between two and six hours in an eight hour workday, as well as sit for six hours a day. (R. 319). She listed no physical diagnoses other than the chronic fatigue syndrome and degenerative joint disease. (R. 316).

On February 11, 2011, the state medical consultants provided a Disability Determination Explanation form. Of relevance to this case, the form reflected that Plaintiff had the following "Medically Determinable Impairments and Severity": (1) chronic fatigue syndrome (CFS) – Primary – Severe; (2) Sleep-Related Breathing Disorders – Other – Severe; (3) Affective Disorders – Secondary – Severe; and (4) Anxiety Disorders – Other – Severe." (R. 56). Despite these severe impairments, however, the Court notes that ultimately the state medical consultants determined that Plaintiff was "Not Disabled." (R. 63).

On December 14, 2009, Plaintiff underwent a mental status exam at Southwestern Pennsylvania Human Services Behavioral Health which indicated her cognition to be below average and her insight and judgment to be poor. (R. 222). Adjustment disorder with depression, alcohol abuse, and hepatitis C were indicated on the multiaxial diagnostic impression. Plaintiff's GAF assessment was 55[1]. (R. 223).

On December 29, 2010, Joel Last, M.D., her psychiatrist, diagnosed Plaintiff with generalized anxiety disorder and heroin abuse (on methadone). William Conforti, M.D., Plaintiff's primary care physician, prescribes Clonazepam for anxiety and Dr. Last has prescribed Seroquel. (R. 35). Dr. Last reported that Plaintiff's affect was full range, her stream of thought was coherent, her concentration was fair, she was fully oriented, her behavior and

---

[1] A patient's GAF score measures, on a scale of 0-100, the overall effect of his mental health disorder on his ability to function in activities of daily living, as well as socially and occupationally. A GAF score of 51 to 60 corresponds to moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition-Revised* 34 (4th ed. Text Revision, Am. Psych. Ass'n 2000).

psychomotor activity were appropriate, and her impulse control was normal. Plaintiff had demonstrated no difficulties with tasks of daily living and he opined that Plaintiff's mental condition did not affect her social functioning or concentration. He also opined that her persistence was not affected and that her prognosis is fair. In a Medical Source Statement, Dr. Last opined that Plaintiff's mental impairments did not affect her ability to perform any mental work-related functions. (R. 308-312).

On December 14, 2011, Dr. Last checked a box indicating that Plaintiff was "temporarily disabled" from 2009 through December of 2012 on a form for the Pennsylvania Department of Public Welfare. The "temporary disability" was the result of bipolar disorder and narcotic addiction in remission. (R. 372).

On April 2, 2012, Dr. Last completed a questionnaire requested by Plaintiff's attorney in which he stated that Plaintiff was stable while on her medications. (R. 325). He reported that Plaintiff had "anxious affect" and rated her current GAF at 65[2]. (R. 327). Dr. Last also opined that Plaintiff had moderate restrictions of activities of daily living; one or two episodes of decompensation; moderate difficulties in maintaining concentration; and moderate difficulties with social functioning. (R. 330). Plaintiff, according to Dr. Last, had a "fair" ability to perform mental work-related activities but her ability to deal with work stresses and maintain attention/concentration was considered poor/none. (R. 332-333). Although Dr. Last opined that Plaintiff would be absent from work more than three times per month, he also believed that she did not have any permanent disability. (R. 326, 329).

Hearing Testimony

Plaintiff testified that the stress of working would cause her to have pseudoseizures. (R.

---

[2] A GAF in the 61 to 70 range indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. DSM-IV at 32.

36, 41). She also testified that she was limited by fatigue from hepatitis C, had problems eating, had swelling in her legs, and pain in her hips, knees, and lower back. (R. 41-44). However, she also stated that she is able to take care of her personal needs and can help with household chores. (R. 39). She does not participate in any activities outside the home, but played computer games for 10 or 15 minutes at a time. (R. 40). In addition, she testified that she believes that hepatitis C is causing her to be very tired and very unmotivated. (R. 42).

### B. Procedural History

Plaintiff initially filed an application for SSI on October 19, 2010, in which she claimed total disability since September 1, 2002. (R. 11). An administrative hearing was held on April 25, 2012 before Administrative Law Judge Barbara Artuso. Plaintiff was represented by counsel and testified at the hearing. Timothy E. Mahler, an impartial vocational expert ("VE"), also opined, based on the hypothetical presented to him, that Plaintiff would be able to succeed at a subset of light exertion, unskilled jobs.

On July 26, 2012, the ALJ rendered an unfavorable decision to Plaintiff in which she found that Plaintiff retained the ability to perform a range of exertional activity and, therefore, was not "disabled" within the meaning of the Act. (R. 19-20). The ALJ's decision became the final decision of the Commissioner on January 9, 2013, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ.

Following the denial of Plaintiff's request for review by the Appeals Council, she filed her Complaint in this Court seeking judicial review of the ALJ's decision. The parties have filed cross-motions for summary judgment. Plaintiff contends that the ALJ erred in finding that she retained the residual functional capacity ("RFC") to perform a full range of work at all exertional

levels. The Commissioner contends that the decision of the ALJ should be affirmed as it is supported by substantial evidence. The Court partially agrees with the Plaintiff and will therefore enter an order remanding this case to the Commissioner for a new hearing, thereby denying the motion for summary judgment filed by the Commissioner.

## III.     Legal Analysis

### A.     Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798 (3d Cir. 2010).

When resolving the issue of whether an adult claimant is disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (*quoting Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is

some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari,* 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

(1) by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell,* 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or,

(2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell,* 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Newell,* 347 F.3d at 545-46; *Jones,* 364 F.3d at 503. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell,* 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether,

collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 502 (3d Cir. 2009); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity"). In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the fifth step of the sequential evaluation process. In making this determination, the ALJ concluded that the claimant's subjective complaints were not as severe or limiting as alleged and would not prevent her from performing light work with certain restrictions on a continuous basis. The ALJ determined that Plaintiff would be able to adequately perform duties commensurate with a subset of work at any exertion level that required her to understand, remember, and carry out only simple instructions; make only simple work-related decisions; have no contact with the general public or interaction with coworkers; and have only occasional interaction with supervisors. The ALJ also concluded that that the record did not demonstrate that Plaintiff's conditions were disabling for a twelve-month period.

**B.     Discussion**

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Med. Cntr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), *cert. denied*., 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence, 42 U.S.C. 405(g); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d. Cir. 1999).

Plaintiff argues that the ALJ committed reversible error by: (1) failing to accept the opinion of Dr. Jain, her treating physician, regarding chronic fatigue syndrome and sleep apnea;

8

(2) failing to mention or discuss the medical evidence indicating that Plaintiff suffered from chronic fatigue syndrome and sleep apnea; (3) failing to recognize that the state agency medical consultants had found Plaintiff's chronic fatigue syndrome and sleep apnea to be severe impairments; and (4) failing to properly consider the limitations associated with these medical conditions when formulating her RFC. The Court concludes that the ALJ's failure to discuss these conditions and evaluate them when formulating the RFC was error.

Although the ALJ may properly accept some medical evidence and reject other evidence, she must consider all the evidence and give some cogent reason for discounting the evidence her rejects. *McDonnell v. Astrue*, 2010 WL 3938259 (W.D. Pa. 2010). *See Plummer*, 186 F.3d at 429 ("The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects."). It is true that the ALJ need only discuss the most pertinent, relevant evidence, but she must also provide sufficient discussion to permit the court to determine whether the rejection of any potentially pertinent, relevant evidence was proper. *White v. Colvin*. 2014 WL 66417 (W.D. Pa. 2014). All of the relevant medical evidence must be considered and the ALJ must explain why she chose to reject certain evidence in arriving at her conclusion. *Brooks v. Astrue*. 2013 WL 4045799 (W.D. Pa. 2013).

In this case, the ALJ failed to adequately address the medical evidence regarding Plaintiff's chronic fatigue syndrome. The ALJ did not recite or analyze the diagnosis of the sleep-disorder specialist, Dr. Jain, at all.[3] The ALJ summarily dismissed the consultative evaluation of Dr. Jabbour (who noted a history of chronic fatigue syndrome) as unsupported by the objective medical record. (R. 18). Finally, and perhaps most notably, the ALJ purportedly relied upon the conclusions of the state agency medical consultants and gave them "significant

---

[3] The Court notes that there was a conclusory citation to Dr. Jain's report, for the incorrect assertion that there "is no definitive diagnosis of or treatment for sleep apnea in the record." See R. 13.

9

weight" because they were supported by the record as a whole. (R. 18). However, the ALJ failed to recognize that those state agency medical consultants explicitly stated that Plaintiff had severe medical impairments from chronic fatigue syndrome and sleep apnea. (R. 56). In short, the ALJ's opinion did not accurately reflect or analyze the medical record regarding Plaintiff's chronic fatigue syndrome.

A determination of disability must consider the combined effects of all of Plaintiff's impairments (including in this case depression, anxiety, personality disorder, panic attacks, sleep apnea, hepatitis C, and chronic fatigue syndrome) upon her ability to perform work related functions. An RFC shall not be formulated without such a full assessment. Although the ALJ's RFC assessment considered Plaintiff's mental limitations, it contained no mention of the limitations associated with her hepatitis C, sleep apnea and chronic fatigue syndrome. The ALJ's finding that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels occurred without consideration of all her relevant physical conditions. The conditions must be considered based upon their cumulative effect. *Burnam v. Schweiker*. 682 F.2d 456, 458 (3d Cir. 1982).

The Plaintiff's limitations from hepatitis C, sleep apnea and chronic fatigue syndrome should have been evaluated further and perhaps should have been included in the hypothetical posed to the VE. The determination that Plaintiff retains the ability to perform light, unskilled work may be incomplete otherwise. In summary, the ALJ's failure to properly discuss all relevant, probative evidence regarding Plaintiff's impairments is in error. *Spearman v. Comm'r of Soc. Sec.*, 2011 WL 1380019 (W.D. Pa 2011).

## IV. Conclusion

The ALJ's failure to consider all of Plaintiff's relevant mental and physical limitations constitutes error and warrants a remand. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504-05 (3d Cir. 2009) (if cumulative effect of all impairments is not addressed by ALJ, proper course is remand to the agency for further explanation). Without such considerations and discussion, the ALJ failed to establish that Plaintiff was capable of performing light level work and her decision is not based upon substantial evidence. On remand, the ALJ must evaluate and make specific findings as to all probative relevant medical evidence.

For these reasons, the Court will partially grant the Motion for Summary Judgment filed by Plaintiff, deny the Motion for Summary Judgment filed by the Commissioner, and remand for further proceedings in accordance with this opinion.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANDY FINK, | ) | |
| Plaintiff | ) | |
| v. | ) | 02:13-cv-00238-TFM |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## ORDER OF COURT

**AND NOW**, this 27th day of March, 2014, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

1. Plaintiff's Motion for Summary Judgment is **GRANTED IN PART,** insofar as it requests a remand;

2. Defendant's Motion for Summary Judgment is **DENIED**;

3. The case is **REMANDED** for further proceedings consistent with the foregoing Memorandum Opinion; and

4. The Clerk shall docket this case as closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: **E. David Harr**
Email: david_@edavidharr.com

**Colin Callahan, Esquire**
Email: colin.callahan@usdoj.gov